AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>iPhone 15<br>2026250600017502-0002<br>("Target Device 3") | )<br>)<br>) Case No.   25mj6863<br>)<br>)<br>) |

### APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-3, incorporated herein by reference.

located in the    Southern    District of    California    , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 952 and 960 | Importation of a Controlled Substance |
| 21 USC Sec. 963 | Conspiracy to Import |

The application is based on these facts:

See Attached Affidavit, incorporated herein by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Dean Page, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
   telephone   *(specify reliable electronic means)*.

Date:   December 9, 2025

*Judge's signature*

City and state:  San Diego, California        Hon. Michelle M. Pettit,  United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Special Agent Dean Page, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic devices, (Collectively, the "**Target Devices**"):

>iPhone 13 Pro Max
>Seizure No. 2026250600017501-0003
>("**Target Device 1**")
>
>iPhone 13 Pro Max
>Seizure No. 2026250600017502-0001
>("**Target Device 2**")
>
>iPhone 15
>Seizure No. 2026250600017502-0002
>("**Target Device 3**")

as further described in Attachments A-1, A-2 and A-3, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960, and 963 as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Angelica GALINDO ("Defendant") for importing approximately 62.36 kilograms (137.48 pounds) of Methamphetamine from Mexico into the United States. The **Target Devices** are currently in the custody of Homeland Security Investigations and located at 2055 Sanyo Avenue, Suite 120, San Diego, California 92154.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I have been employed as a Special Agent with Homeland Security Investigations (HSI) since December of 2021. I am currently assigned to the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4. During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry, Otay Mesa Port of Entry, and Tecate Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States. These communications

can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to a destination within the United States.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

   a. tending to indicate efforts to import controlled substances from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

7. On December 6, 2025, at approximately 11:23 AM, Angelica GALINDO, ("GALINDO"), Angelica Marlene HERNANDEZ ("HERNANDEZ"), and HERNANDEZ' infant child, all United States citizens, applied for entry into the United States from Mexico through the Otay Mesa POE in vehicle lane #5. GALINDO was the driver, and registered owner of a 2009 HYUNDAI SONATA ("the vehicle") bearing California license plates. HERNANDEZ and her infant child were passengers of the vehicle.

8. A Canine Enforcement Team was conducting pre-primary operations when the Human and Narcotic Detection Dog alerted to the engine area of the vehicle. The vehicle was referred for further inspection. GALINDO, HERNANDEZ, and HERNANDEZ' infant child were escorted to a security office.

9. In the security office, GALINDO stated she was crossing the border to drive her daughter and grandson to Hemet, California.

10. A CBPO operating the Z-Portal X-Ray machine detected anomalies in

the engine block area of the vehicle.

11. Further inspection of the vehicle resulted in the discovery of 6 packages concealed in the engine block of the vehicle, with a total approximate weight of 62.36 kgs (137.48 lbs). A sample of the substance contained within the packages field tested positive for the characteristics of methamphetamine.

12. GALINDO was placed under arrest at approximately 12:44 PM.

13. During a post-Miranda interview, GALINDO denied knowledge that the narcotics were in the vehicle. GALINDO stated that she was going to drop her daughter and grandson (HERNANDEZ and HERNANDEZ' infant child) off at their home in Hemet, California. GALINDO stated that she lent the vehicle to her friend "M.G.", on the evening of December 5, 2025. GALINDO stated, M.G. returned the vehicle on the morning of December 6, 2025. GALINDO stated that she has known M.G. for over three years and had no knowledge of her involvement with narcotic smuggling activity. GALINDO told agents she did not know if M.G. frequently crossed the border.

14. Border crossing search results show on August 29, 2024, GALINDO, HERNANDEZ, HERNANDEZ' infant child and M.G., crossed into the United States from Mexico through the San Ysidro POE, while driving the 2009 Hyundai Sonota.

15. GALINDO gave Homeland Security Investigations (HSI) Special Agent (SA) Dean Page consent to examine her Apple iPhone (**Target Device 1**). An examination of GALINDO's WhatsApp messages show a conversation string with, a phone number ending in "9964" (hereinafter 9964). On October 31, 2025, at 6:52 PM, 9964 sends GALINDO an Apple location pin showing a title of, "M.G.'s location."

16. An examination of GALINDO's recently deleted text messages, located in her iPhone messenger application, shows 9964 as deleted "1 Day" ago with 274 messages in the conversation. On October 25, 2025, at 9:29 AM, GALINDO messages

9964 and states, "On my way to the border."

17. On October 25, 2025, at 10:28 AM, GALINDO, HERNANDEZ and HERNANDEZ' infant child enter the United States from Mexico while driving the 2009 Hyundai Sonata through the Otay Mesa POE. GALINDO notifies 9964 she has "crossed" and is told to drive to Los Angeles. 9964 sends GALINDO a phone number to contact for a location to drive to. GALINDO informs 9964 she spoke to the contact and forwarded the address she was traveling to. Los Angeles is approximatley one hour and 45 minutes when driving.

18. GALINDO continues to correspond with 9964 throughout the afternoon of October 25. The two discuss the car being taken so that something can be removed from within, and GALINDO advises 9964 that she has deleted all her text messages.

19. During a post-Miranda interview, HERNANDEZ denied knowledge that the narcotics were in the vehicle. HERNANDEZ stated she travels to Tijuana often to visit her mother. HERNANDEZ stated that she crossed into Mexico a couple of days ago and the only time she was aware of her mother not having possession of the vehicle, was yesterday when she lent it to her friend "M." HERNANDEZ told agents she didn't know much about "M." and she's only ever seen her once, when she came to pick up the vehicle. HERNANDEZ stated that she was traveling back to her home in Hemet, California.

20. HERNANDEZ was placed under arrest at approximately 5:20 PM.

21. GALINDO was arrested and charged with violation of Title 21, United States Code, 952 and 960, importation of a controlled substance.

22. HERNANDEZ was arrested and charged with a violation of Title 21, United States Code, 952 and 960, importation of a controlled substance.

23. **Target Device 1** was found and seized by a Customs and Border

Protection Officer (CBPO) who was tasked to perform a secondary inspection of the Vehicle and inventory all the property seized from Defendant 1 and her Vehicle. During the interview, Defendant 1 was shown **Target Device 1** and identified **Target Device 1** as belonging to her.

24. **Target Device 2** and **Target Device 3** were found and seized by a Customs and Border Protection Officer (CBPO) who was tasked to perform a secondary inspection of the Vehicle and inventory all the property seized from Defendant 2. During the interview, Defendant 2 was shown **Target Device 2** and **Target Device 3**, and identified **Target Device 2** and **Target Device 3** as belonging to her

25. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Devices**. In light of the above facts and my experience and training, there is probable cause to believe that the Defendant was using the **Target Devices** to communicate with others to further the importation of illicit narcotics into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics.

26. Based upon my training and experience, it is also not unusual for individuals, such as the Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Based on a review of **Target Device 1**, communication indicated involvement with narcotic smuggling activity on October 10,

2025. Accordingly, I request permission to search the **Target Devices** for data beginning on September 25, 2025, up to and including December 6, 2025.

## METHODOLOGY

27. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

28. Following the issuance of this warrant, I will collect the **Target Devices** and subject them to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

29. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

30. Defendants gave law enforcement written consent to review and download **Target Devices**. Law enforcement manually reviewed **Target Devices** and previously attempted to obtain the evidence sought out by the warrant but was unable to download at the Port of Entry.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

## CONCLUSION

31. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Target Devices** will yield evidence of Defendant's violations of Title 21, United States Code, Sections 952, 960 and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachments A-1, A-2 and A-3, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Special Agent Dean Page
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 9th day of December 2025.

_____
Honorable Michelle M. Pettit
United States Magistrate Judge

# ATTACHMENT A-3

## PROPERTY TO BE SEARCHED

The following property is to be searched:

    iPhone 15
    Seizure No. 2026250600017502-0002
    (**"Target Device 3"**)

**Target Device 3** is currently in the possession of Homeland Security Investigations, located at 2055 Sanyo Avenue, Suite 120, San Diego, California 92154.

## **ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the cellular telephones described in Attachments A-1, A-2, and A-3, includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of September 25, 2025, up to and including December 6, 2025.:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of Methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.